UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

NANCYLEE RICHMOND-JEFFERS,    )
                              )
            Plaintiff         )
                              )
        v.                    )    Case No. 2:08-cv-278
                              )
PORTER TOWNSHIP SCHOOL        )
CORPORATION,                  )
                              )
            Defendant         )

OPINION AND ORDER

This matter is before the court on the Motion for Summary
Judgment [DE 136] filed by the defendant, Porter Township School
Corporation, on September 12, 2011; the Cross-Motion for Summary
Judgment [DE 144] filed by the plaintiff, Nancylee Richmond-
Jeffers, on November 16, 2011; the Motion to Strike Plaintiff's
Memorandum in Support of her Cross Motion for Summary Judgment
and Response to Defendant's Motion for Summary Judgment [DE 149]
filed by the defendant on November 18, 2011; the Motion for Leave
to Uphold her Memorandum in Support of Her Cross-Motion for
Summary Judgment and Response to Defendant's Motion for Summary
Judgment and Memorandum [DE 151] filed by the plaintiff on
November 21, 2011; and the Motion to Strike Portions of Plain-
tiff's Verified Affidavit and Designation of Materials [DE 153]
filed by the defendant on December 2, 2011.

For the reasons set forth below, the Motion for Summary Judgment [DE 136] is **GRANTED IN PART** and **DENIED IN PART;** the Cross-Motion for Summary Judgment [DE 144] is **DENIED;** the Motion to Strike Plaintiff's Memorandum in Support of her Cross Motion for Summary Judgment and Response to Defendant's Motion for Summary Judgment [DE 149] is **DENIED;** the Motion for Leave to Uphold her Memorandum in Support of Her Cross-Motion for Summary Judgment and Response to Defendant's Motion for Summary Judgment and Memorandum [DE 151] is **GRANTED;** and the Motion to Strike Portions of Plaintiff's Verified Affidavit and Designation of Materials [DE 153] is **DENIED AS MOOT.**

## Background

The plaintiff, Nancylee Richmond-Jeffers, was employed by the defendant, Porter Township School Corporation (PTSC), as a seventh grade science teacher at Boone Grove Middle School for 29 years.  During her employment, Richmond-Jeffers developed cancer, rectocele, cystocele, dysfunction of the bowel and bladder, and bowel and bladder urgency.  Richmond-Jeffers complained that PTSC failed to accommodate her disabilities and did not provide her relief during the school day so she could use the restroom. Richmond-Jeffers filed a charge of discrimination with the EEOC in 2006 for disability discrimination and failure to accommodate. Richmond-Jeffers and PTSC entered into a Negotiated Settlement

Agreement to resolve her charge, which contained various accommodations. Most notably, Richmond-Jeffers and PTSC arranged times for the principal, Paul Schlottman, to relieve Richmond-Jeffers to use the restroom during the day.

PTSC states that Richmond-Jeffers' claim for retaliation and disability discrimination was based on its failure to relieve her on three occasions as required by the settlement agreement. Richmond-Jeffers represents that she was not provided the agreed relief on average of once a week. Richmond-Jeffers also complains that she was not provided a preparation period after teaching two classes, as agreed to, and that she was forced to teach five periods in a row without relief during the 2006 ISTEP Testing. Richmond-Jeffers claims that she raised her concerns at teachers meetings but that her complaints were not addressed. Richmond-Jeffers often had to signal the teacher across the hall to watch her classroom so she could use the restroom. Richmond-Jeffers resorted to wearing sanitary napkins and was ridiculed by co-workers.

In January 2008, Schlottman came to relieve Richmond-Jeffers and observed that she was allowing the students to read at their desks, rather than instructing the students. Schlottman sent Richmond-Jeffers an e-mail to address this concern, but he subsequently observed the students doodling or reading silently.

On August 29, 2007, PTSC held a staff meeting to prepare for an open house the following night.  The teachers were instructed to make the parents feel welcome and to inform the parents they would help their children succeed in their class.  Following the open house, parents complained that Richmond-Jeffers was unfriendly, confrontational, abrasive, unprofessional, and intimidating.

In May 2007, a parent met with Schlottman and Richmond-Jeffers to complain that Richmond-Jeffers' rat dissection unit was inappropriate for seventh grade students and not compliant with the Indiana State Standards for seventh grade science.  Schlottman asked Richmond-Jeffers to demonstrate that the rat dissection unit was age appropriate and to defend the merits of the unit.  Schlottman later determined that the manual's readability was at a high school level.  Because Richmond-Jeffers had not demonstrated that the rat dissection unit was age appropriate and Schlottman was trying to reduce costs, he did not order the supplies for the rat dissection unit.  Schlottman met with Richmond-Jeffers and instructed her not to teach the rat dissection unit.  Richmond-Jeffers alternatively offered to show a video of a rat dissection with a "fresh kill."  Schlottman rejected Richmond-Jeffers' proposal and instructed her not to show the video.  On March 6, 2008, Richmond-Jeffers showed the

video to her class.  Students and parents complained about the video.  Schlottman met with Richmond-Jeffers to discuss the appropriateness of the curriculum, and Richmond-Jeffers admitted that she previously agreed not to teach the unit.

On March 6, 2008, Schlottman sent Richmond-Jeffers correspondence indicating that he believed her actions teaching the rat dissection unit constituted insubordination and that he was requesting that the superintendent, Nicholas Brown, suspend her with pay immediately.  On March 10, 2008, Brown told Richmond-Jeffers that she was suspended with pay effective March 7, 2008.  On March 27, 2008, Brown sent Richmond-Jeffers correspondence explaining that he was recommending cancellation of her teaching contract due to allegations of insubordination under Indiana Code 20-28-7-1(a)(2), neglect of duty under Indiana Code 20-28-7-1(a)(3), and other good and just cause under Indiana Code 20-28-7-1(a)(7).  Richmond-Jeffers requested a hearing, and a hearing was held before the Board of School Trustees of PTSC on April 25, 2008.

At the hearing, Richmond-Jeffers testified that her termination was the result of a conspiracy because a parent and Schlottman did not like her teaching style and because she previously filed a grievance regarding her evaluation.  The Board found that Richmond-Jeffers' actions teaching the rat dissection unit was

both insubordination and "other good and just cause" and voted to cancel Richmond-Jeffers' teaching contract. Richmond-Jeffers was terminated on May 22, 2008.

Richmond-Jeffers filed a charge with the EEOC on April 8, 2008. The EEOC issued a Notice of Right to Sue on June 17, 2008. Richmond-Jeffers filed her complaint with this court on September 15, 2008, alleging discrimination based on age, disability, and retaliation for previously filing a charge of discrimination with the EEOC.

With regard to her claim for age discrimination, Richmond-Jeffers is 69 years old. She complains that Schlottman frequently asked her when she was going to retire and that she felt he was trying to force her out. Richmond-Jeffers also complains that younger teachers were treated more favorably. For example, Richmond-Jeffers ordered new lab tables, but they were removed from her room and given to a younger teacher. Schlottman allegedly treated other older teachers less favorably and sought out written complaints from students.

PTSC filed a motion for summary judgment on September 12, 2011. Richmond-Jeffers responded by filing a cross-motion for summary judgment and a 45 page brief in support of her motion and in response to PTSC's motion. PTSC moved to strike Richmond-Jeffers' brief for failure to comply with the 25 page limit.

Richmond-Jeffers responded by seeking leave to file the brief, and PTSC did not file a reply in opposition. PTSC also filed a motion to strike portions of Richmond-Jeffers' supporting documentation.

<u>Discussion</u>

As an initial matter, PTSC moves to strike Richmond-Jeffers' brief because she exceeded the page limit imposed by N.D. Ind. Local Rule 7.1(d) without seeking leave of court. N.D. Ind. Local Rule 7.1(d) states that no brief shall exceed 25 pages in length. Richmond-Jeffers' brief totaled 45 pages. After PTSC filed its motion to strike, Richmond-Jeffers sought leave to exceed the page limit, and PTSC did not object. Because Richmond-Jeffers' brief sought both to respond to PTSC's motion for summary judgment and to support her cross-motion for summary judgment, the court will allow her brief to stand. PTSC's motion to strike Richmond-Jeffers' brief [DE 149] is DENIED, and the Motion for Leave to Uphold her Memorandum in Support of Her Cross-Motion for Summary Judgment and Response to Defendant's Motion for Summary Judgment and Memorandum [DE 151] filed by the plaintiff is GRANTED.

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is

entitled to a judgment as a matter of law." **Celotex Corp. v. Catrett**, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); **Stephens v. Erickson,** 569 F.3d 779, 786 (7th Cir. 2009). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. **Adickes v. S.H. Kress & Company**, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); **Stephens**, 569 F.3d at 786. A fact is material if it is outcome determinative under applicable law. There must be evidence on which the jury reasonably could find for the nonmoving party. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); **Stephens**, 569 F.3d at 786; **Wheeler v. Lawson**, 539 F.3d 629, 634 (7th Cir. 2008).

Summary judgment is inappropriate for determination of claims in which issues of intent, good faith, and other subjective feelings play dominant roles. **Ashman v. Barrows,** 438 F.3d 781, 784 (7th Cir. 2006). Upon review, the court does not evaluate the weight of the evidence, judge the credibility of witnesses, or determine the ultimate truth of the matter; rather, the court will determine whether there exists a genuine issue of triable fact. **Wheeler**, 539 F.3d at 634 (*citing* **Anderson**, 477 U.S. at 248, 106 S.Ct. at 2510).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> ***Anderson***, 477 U.S. at 250, 106 S.Ct. at 2511

*See also* ***Reeves v. Sanderson Plumbing Prods., Inc***., 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-122 (2000) (setting out the standard for a directed verdict); ***Celotex Corp***., 477 U.S. at 322-23, 106 S.Ct. at 2553; ***Stephens,*** 569 F.3d at 786; ***Argyropoulos v. City of Alton***, 539 F.3d 724, 732 (7th Cir. 2008) (stating that a genuine issue is one on which a reasonable fact finder could find for the nonmoving party); ***Springer v. Durfling-er,*** 518 F.3d 479, 483 (7th Cir. 2008)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

Richmond-Jeffers' complaint alleges discrimination in violation of the Age Discrimination in Employment Act (ADEA) and the Americans with Disabilities Act (ADA) and retaliatory discharge. The ADEA states:

> It shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.
>
> 29 U.S.C. §623(a)(1)

A claim under the ADEA is successful if the plaintiff can show that her "termination or other adverse employment action would not have occurred 'but for' her employer's motive to discriminate on the basis of her age." *Fuka v. Thomson Consumer Electronics*, 82 F.3d 1397, 1402 (7th Cir. 1996); *Horwitz v. Board of Education of Avoca School District No. 37*, 260 F.3d 602, 610 (7th Cir. 2001); *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999).

A plaintiff may prove discrimination by direct evidence of discriminatory intent or, where no direct evidence exists, by using the indirect burden-shifting method established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-805, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973), and refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1092, 67 L.Ed.2d 207 (1981). *See Reeves*, 530

U.S. at 142, 120 S.Ct. at 2105; *Cerutti v. BASF Corporation*, 349 F.3d 1055, 1060-61 (7th Cir. 2003); *Franzoni v. Hartmarx Corporation*, 300 F.3d 767, 771 (7th Cir. 2002); *Horwitz*, 260 F.3d at 610.

Under the direct method, the plaintiff must state facts in the form of direct or circumstantial evidence that show the employer's decision was motivated by an impermissible factor such as age. *Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 272 (7th Cir. 2004); *Gusewelle v. City of Wood River*, 374 F.3d 569, 574 (7th Cir. 2004); *Rhodes v. Illinois Department of Transportation*, 359 F.3d 498, 504 (7th Cir. 2004); *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 938-39 (7th Cir. 2003). Direct evidence is evidence that "can be interpreted as an acknowledgment of the defendant's discriminatory intent." *Ezell v. Potter*, 400 F.3d 1041, 1051 (7th Cir. 2005); *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003); *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 347 (7th Cir. 1997). Circumstantial evidence, by contrast, must create a "convincing mosaic" that "allows the jury to infer intentional discrimination by the decision maker" and points directly to a discriminatory reason for the employment decision. *Rhodes*, 359 F.3d at 504 (*quoting* *Troupe v. May Department Stores Company*, 20 F.3d 734, 737 (7th Cir. 1994)); *Rogers*, 320 F.3d at 753; *Adams*, 324 F.3d at 939.

Under the ***McDonnell Douglas*** burden shifting method, the plaintiff first must establish a prima facie case by showing that: (1) she is over 40 years of age; (2) she performed her job satisfactorily and in accordance with the defendant's legitimate expectations; (3) she suffered an adverse employment action; and (4) a younger employee, who is similarly situated, was treated more favorably. ***Olson v. Northern FS, Inc.***, 387 F.3d 632, 635 (7th Cir. 2004); ***Gusewelle***, 374 F.3d at 574; ***Franzoni***, 300 F.3d at 771-72; ***Gordon v. United Airlines, Inc.***, 246 F.3d 878, 885-86 (7th Cir. 2001).

Once the plaintiff establishes a prima facie case, a presumption of discrimination is created, and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment actions. ***Gusewelle***, 374 F.3d at 574; ***Zaccagnini v. Charles Levy Circulating Company***, 338 F.3d 672, 675 (7th Cir. 2003); ***Grayson v. City of Chicago***, 317 F.3d 745, 748 (7th Cir. 2003). The defendant's burden is not one of persuasion, but rather of production and "can involve no credibility assessments." ***St. Mary's Honor Center v. Hicks***, 509 U.S. 502, 509, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407 (1993); ***Reeves***, 530 U.S. at 142, 120 S.Ct. at 2106.

The burden then shifts back to the plaintiff who must now show by a preponderance of the evidence that the defendant's

reasons are merely a pretext for discrimination. ***Steinhauer v. Degolier***, 359 F.3d 481, 484 (7th Cir. 2004); ***Volvosek v. Wisconsin Department of Agriculture, Trade and Consumer Protection***, 344 F.3d 680, 692 (7th Cir. 2003). The plaintiff cannot establish pretext merely by showing that the "reason was doubtful or mistaken." ***Crim v. Board of Education of Cairo School District No. 1***, 147 F.3d 535, 541 (7th Cir. 1998). *See also* ***Rummery v. Illinois Bell Telephone Company***, 250 F.3d 553, 557 (7th Cir. 2001). Rather, the plaintiff must show that the employer is lying or that the employer's reasoning has no basis in fact. ***Lesch v. Crown Cork & Seal Company***, 282 F.3d 467, 473 (7th Cir. 2002). *See also* ***Schuster v. Lucent Technologies, Inc.***, 327 F.3d 569, 574-576 (7th Cir. 2003). The trier of fact still may consider the evidence establishing a plaintiff's prima facie case and inferences properly drawn therefrom on the issue of whether a defendant's explanation is pretextual. ***Reeves,*** 530 U.S. at 143, 120 S.Ct. at 2106.

Despite these shifting burdens of production, the ultimate burden of persuasion remains at all times with the plaintiff. ***St. Mary's Honor Center***, 509 U.S. at 507, 113 S.Ct. at 2747; ***Burdine***, 450 U.S. at 254, 101 S.Ct. at 1094; ***Butts v. Aurora Healthcare***, 387 F.3d 921, 924 (7th Cir. 2004). A plaintiff alleging discrimination, however, has a lesser burden when

proceeding on a summary judgment motion.  In **_Anderson v. Baxter_**

**_Healthcare Corp._**, 13 F.3d 1120 (7th Cir. 1994), the Seventh

Circuit stated:

> Both **_McDonnell Douglas_** and [**_St. Mary's Honor_**
> **_Center v. Hicks_**, 509 U.S. at 507, 113 S.Ct.
> at 2747] speak to the burden the plaintiff
> bears at trial.  However, for summary judg-
> ment purposes, the nonmoving party, in this
> case the plaintiff, has a lesser burden.  He
> must only "produce evidence from which a
> rational fact-finder could infer that the
> company lied" about its proffered reasons for
> dismissal.
>
> 13 F.3d at 1124 (_quoting_ **_Shager v. Upjohn_**,
> 913 F.2d 398, 401 (7th Cir. 1994))

_See also_ **_Zaccagnini_**, 338 F.3d at 676 (The plaintiff may avoid

summary judgment by showing specific facts that place the

employer's explanation in doubt); **_O'Neal v. City of New Albany_**,

293 F.3d 998, 1005 (7th Cir. 2002); **_Alexander v. Wisconsin De-_**

**_partment of Health and Family Services_**, 263 F.3d 673, 683 (7th

Cir. 2001).  If the plaintiff is unable to meet her burden, her

claims must fail.

Richmond-Jeffers first attempts to show that she was dis-

criminated against because of her age with direct evidence.

Richmond-Jeffers explains that Schlottman asked her when she was

going to retire and made her feel as though he was forcing her

out.  However, a supervisor's question about a projected retire-

ment date is not direct evidence that the subsequent termination

14

was motivated by age. *See Debs v. Northeastern Illinois University*, 153 F.3d 390, 396 (7th Cir. 1998).

In *Debs*, the plaintiff was questioned about his projected retirement date and stated that his supervisor made statements "to the effect of [Debs] being too old to continue working at the Heating Plant." *Debs*, 153 F.3d at 396. Around this time, an internal investigation was launched to address several allegations of improper conduct involving management and staff. *Debs*, 153 F.3d at 393. The independent investigator determined that Debs was directly responsible for the breakdown in the relationship between himself and several of his subordinates and was unfit to continue as head of the heating plant. Debs was fired and filed a complaint for age discrimination. *Debs*, 153 F.3d at 393. The court concluded that a social conversation concerning projected retirement was not direct evidence of the intent to fire for an impermissible reason. *Debs*, 153 F.3d at 396-97. The supervisor's statements were insufficient to overcome the independent investigator's report that concluded that Debs behaved inappropriately. *Debs*, 153 F.3d at 397. There was no evidence to suggest that Debs' supervisor played a role in the investigator's report. Moreover, Debs' subjective interpretation of his supervisor's statements was not direct proof of improper conduct on behalf of his supervisor. The court demanded evidence of the

15

actual statements made as opposed to the plaintiff's interpretation or the feeling he derived from the statements. *Debs*, 153 F.3d at 397.

Schlottman's question concerning Richmond-Jeffers' projected retirement cannot support a finding that her subsequent termination was motivated by age. Rather, it was permissible for Schlottman to question Richmond-Jeffers about her projected retirement date. Although Richmond-Jeffers felt forced out, her subjective interpretation is insufficient to support an inference of animus. There is nothing linking Schlottman's retirement questions to the decision to terminate her, a decision which was approved by individuals who did not make similar comments. Richmond-Jeffers' termination went through the chain of command, and all of them agreed that she was insubordinate. Her termination was approved by the superintendent and the school board. One supervisor's statements concerning her projected retirement does not taint the entire process of review.

This does not prevent Richmond-Jeffers from setting forth a claim for age discrimination under the indirect burden shifting method of proof. Richmond-Jeffers is over 40 years of age and within the protected class. PTSC concedes that Richmond-Jeffers suffered an adverse employment action. To succeed, Richmond-Jeffers must show that she was performing her job satisfactorily

and in accordance with the defendant's legitimate expectations and that individuals outside the protected class, those younger than 40, were treated more favorably. Richmond-Jeffers fails on both accounts.

Schlottman advised Richmond-Jeffers on numerous occasions that she was prohibited from teaching the rat dissection unit. Richmond-Jeffers acknowledged that she agreed to refrain from teaching this unit, yet proceeded to show the rat dissection video. The evidence is undisputed that Richmond-Jeffers knew the unit should not be taught. By going against the direct orders of her employer, Richmond-Jeffers was not performing in accordance with her employer's legitimate expectations. *See Mohamad v. Board of Trustees of Purdue University*, 2008 WL 2074401, *2 (N.D. Ind. 2008) (holding that the plaintiff did not meet his employer's expectations because he failed to perform in the manner he was explicitly directed).

Moreover, Richmond-Jeffers has not pointed to one similarly situated employee outside the protected class that did not face a similar fate. "An employee is similarly situated to a plaintiff if the two employees not only report to the same supervisor, but also have engaged in similar conduct without such differentiating circumstances as would distinguish the employer's treatment of them." *Mohammad*, 2008 WL 2074402 at *2 (*citing Snipes v. Ill.*

*Dep't of Corrs.*, 291 F.3d 460, 463 (7th Cir. 2002)).  Although

Richmond-Jeffers contends that younger employees were treated

more favorably, the situations Richmond-Jeffers refers to are

unrelated to PTSC's decision to terminate her employment and do

not demonstrate that PTSC treated "similarly situated" employees

differently.  Richmond-Jeffers complains that younger teachers

received more equipment, specifically, the lab tables she or-

dered, and that "positions and recognition were given to younger

teachers".  (Pltf. Br. p. 4)  Even if younger teachers were

treated more favorably in this regard,  these examples do not

show that PTSC treated younger teachers who failed to comply with

a direct order more favorably.  Because the record is devoid of

any suggestion that PTSC treated similarly situated employees

outside the protected class more favorably when they failed to

comply with the demands of the school, the principal, or any

other superior, Richmond-Jeffers has failed to establish a prima

facie case, and summary judgment must be awarded in favor of PTSC

on this issue.

Richmond-Jeffers also alleges that she was discriminated

against on the basis of her disability. The Americans with

Disabilities Act ("ADA") prohibits discrimination against an

individual based upon such person's disability. 42 U.S.C.

§12112(a).  An individual claiming protection must show that she

is "disabled." 42 U.S.C. §12112(a). An individual is disabled within the meaning of the ADA when she suffers a physical or mental impairment that substantially limits one or more major life activities, has a record of such impairment, or is regarded as having such an impairment. 29 C.F.R. §1630.2. Major life activities include activities that a person generally does on a daily basis, including, but not limited to, "walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. §1630.2(i). The court must make an individualized analysis to determine whether an individual's impairments "substantially limit" her "major life activities." ***E.E.O.C. v. Lee's Log Cabin, Inc.***, 546 F.3d 438, 442 (7th Cir. 2008).

After a plaintiff establishes that she is disabled or regarded as such, she then must show that she was qualified for the position in question. ***Hoffman v. Caterpillar, Inc.***, 256 F.3d 568, 572 (7th Cir. 2001). A qualified person with a disability is someone who (1) has a disability but still satisfies the requisite skill, experience, education, and other job-related requirements of her employment position, and (2) can perform the essential functions of the position held or desired, with or without reasonable accommodation. 29 C.F.R. §1630.2(m); ***Budde v. Kane County Forest Preserve***, 597 F.3d 860, 862 (7th Cir. 2010). Consideration is given to the employer's judgment as to what func-

tions of the job are essential. 42 U.S.C. §12111(8); *Jackson v. City of Chicago*, 414 F.3d 806, 811 (7th Cir. 2005).

When an employee is unable to perform the essential functions of her job, the court must consider whether any reasonable accommodation for the disabled employee would help her to perform the job. *Amadio v. Ford Motor Company*, 238 F.3d 919, 928 (7th Cir. 2001). *See* 42 U.S.C. §12112(b)(5)(A) (requiring the employer to make reasonable accommodations). *See also* 42 U.S.C. §12111(9) (defining "reasonable accommodation"). If any accommodation would place an "undue hardship" on the employer's business, the employer is not required to make the accommodation. *Amadio*, 238 F.3d at 928. *See* 42 U.S.C. §12112(b)(5)(A) (providing that the employer does not have to undertake accommodations that create an undue hardship). *See also* 42 U.S.C. §12111(10) (defining undue hardship). In other words, an "unqualified" individual would be someone who could not do the job no matter what reasonable accommodations the employer made for that employee. *Filar v. Board of Education of City of Chicago*, 526 F.3d 1054, 1067 (7th Cir. 2008).

"Once a plaintiff has established that she is a qualified individual with a disability, she may show discrimination in either of two ways: by presenting evidence of disparate treatment or by showing a failure to accommodate." *Hoffman*, 256 F.3d at 572

(*citing* ***Sieberns v. Wal-Mart Stores, Inc.***, 125 F.3d 1019, 1021–22
(7th Cir. 1997)). In disparate treatment claims, the plaintiff
may prove that she was treated differently than other workers on
the basis of a protected characteristic either with direct evi-
dence or indirectly using the ***McDonnell Douglas*** burden-shifting
method. ***Hoffman***, 256 F.3d at 572 (*citing* ***McDonnell Douglas v.
Green***, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). "In
order to prevail in the absence of direct evidence, a plaintiff
must first make out a prima facie case by showing that: (1) she
is disabled within the meaning of the ADA; (2) she was meeting
the legitimate employment expectations of her employer; (3) she
suffered an adverse employment action; and (4) similarly situated
employees received more favorable treatment." ***Hoffman***, 256 F.3d
at 572.

In failure to accommodate cases, in addition to showing that
she was a qualified disabled individual, the plaintiff must show
that the employer was aware of her disability and failed to
accommodate it. ***Ekstrand v. School District of Somerset***, 583 F.3d
972, 975 (7th Cir. 2009); ***King v. City of Madison***, 550 F.3d 598,
600 (7th Cir. 2008). Reasonable accommodations may include:

>    (A) making existing facilities used by em-
>    ployees readily accessible to and usable by
>    individuals with disabilities; and
>
>    (B) job restructuring, part-time or modified
>    work schedules, reassignment to a vacant

position, acquisition or modification of
equipment or devices, appropriate adjustment
or modifications of examinations, training
materials or policies, the provision of qual-
ified readers or interpreters, and other
similar accommodations for individuals with
disabilities.

42 U.S.C. §12111(9)

The plaintiff must be clear whether she is proceeding on a theory of disparate treatment or by showing a failure to accommo-date. *Coleman v. Keebler Co.*, 997 F.Supp. 1102, 1110 (N.D. Ind. 1998). Based upon the brief Richmond-Jeffers submitted in response to PTSC's motion for summary judgment and in support of her cross motion, she intends to proceed under both theories. Under both theories of discrimination, it must be established that the plaintiff was disabled within the meaning of the ADA and that she was a qualified individual who could have performed her position with or without accommodation. PTSC does not dispute these elements.

Turning first to Richmond-Jeffers' claim for disparate treatment under the ADA, the court already has determined that Richmond-Jeffers was not performing up to her employer's legiti-mate expectations, and Richmond-Jeffers has made no attempt to show that any similarly situated employees were treated more favorably. Richmond-Jeffers did not point to one individual who was similarly situated, meaning he acted contrary to a direct

demand of a superior, was outside the protected class, and retained his position.  These shortcomings are fatal to Richmond-Jeffers' claim for disparate treatment under the ADA.

Richmond-Jeffers also complains that PTSC failed to accommodate her disability because neither Schlottman nor his appointee provided her breaks as the parties previously agreed. "To prevail on her ADA claim [Plaintiff] must show that she has a disability, that she is 'otherwise qualified' for the job, and that her employer refused to make a 'reasonable accommodation' for her disability." *Rauen v. U.S. Tobacco Mfg. Ltd. P'ship*, 319 F.3d 891, 895—96 (7th Cir. 2003); *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1283 (7th Cir. 1996) ("If it is true that FWCS should have reasonably accommodated Bultemeyer's disability and did not, FWCS has discriminated against him. There is no need for indirect proof or burden shifting. Recently, we have decided several reasonable accommodation cases in this circuit, all without using the *McDonnell-Douglas* analysis")(*citing Beck v. University of Wisconsin Bd. of Regents*, 75 F.3d 1130 (7th Cir. 1996); *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560 (7th Cir. 1996)).

The plaintiff need not prove an adverse employment action to succeed on her claim for failure to accommodate.  *Nawrot v. CPC International*, 259 F.Supp.2d 716, 724 (N.D. Ill. 2003).  The ADA

imposes an affirmative duty on the employer to accommodate
disabilities, and employers cannot escape liability for failing
to fulfill their duty simply because the plaintiff did not suffer
an adverse employment action. *Nawrot*, 259 F.Supp.2d at 724.
"The ADA requires employers to accommodate employee's disabili-
ties whether or not the failure to do so is based on some dis-
criminatory animosity toward the employee's disability." *Nawrot*,
259 F.Supp.2d at 724. However, the plaintiff must show that the
accommodation requested not only was reasonable, but necessary to
perform the essential functions of the job, to seek treatment, or
to avoid personal harm. *Nawrot*, 259 F.Supp.2d at 723 n.3.

The parties dispute whether PTSC made reasonable accommoda-
tions. PTSC argues that there were only three instances where
Richmond-Jeffers was denied relief, and these isolated incidents
are insufficient to show that the accommodations were unreason-
able. Richmond-Jeffers states that relief was denied on more
than three occasions and claims that she was denied relief on
average of one time per week. Richmond-Jeffers further argues
that PTSC failed to comply with other provisions of the parties'
accommodation agreement, including scheduling her classes so that
she had a prep period after two classes.

In support of her position, Richmond-Jeffers points to her
deposition testimony. When questioned about PTSC's compliance

with the negotiated agreement, Richmond-Jeffers stated that
relief was only provided "sometimes", "was not consistent or
daily", and was not provided at the agreed upon times. (Pltf.
Dep. pp. 43-44, 46-47) PTSC moved to strike many of Richmond-
Jeffers' exhibits, including portions of Richmond-Jeffers' depo-
sition that were not specifically referenced in her memorandum.
However, Richmond-Jeffers referenced the specific pages and lines
of her deposition testimony that support her position that relief
was not provided as required by the parties' agreement.  There-
fore, PTSC has not moved to strike this testimony which Richmond-
Jeffers relies on to show PTSC's failure to accommodate.

   In light of this testimony, there is conflicting evidence
concerning whether PTSC provided reasonable accommodations.  The
evidence shows that PTSC failed to provide relief on occasion,
although the extent of PTSC's failure to provide relief is
disputed.  The conflicting evidence is best left for a jury to
resolve.

   Richmond-Jeffers' final claim was for retaliatory termina-
tion for filing a charge of discrimination with the EEOC.  The
ADEA and ADA prohibit retaliation by the employer in response to
an employee filing a charge with the EEOC.  29 U.S.C.A. §623(d);
42 U.S.C. §12203(a)*; Turner v. The Saloon, Ltd.*, 595 F.3d 679,
690 (7th Cir. 2010).  Unlawful retaliation occurs when an em-

ployer takes actions that discriminate against an employee because she has opposed a practice forbidden by the ADA or ADEA. 29 U.S.C.A. §623(d); 42 U.S.C. §12203(a); *Turner*, 595 F.3d at 690.  An employer effectively retaliates against an employee "by taking actions not directly related to [ ] employment or by causing [ ] harm outside the workplace." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63, 126 S.Ct. 2405, 2412, 165 L.Ed.2d 345 (2006).  *See also* *Thompson v. North American Stainless, LP*, ___U.S.___, 131 S.Ct. 863, 868, 178 L.Ed.2d 694 (2011).  To state a claim for retaliation, "the plaintiff must allege the following: (1) he or she engaged in a statutorily protected activity; (2) he or she suffered an adverse action; and (3) a causal link between the protected activity and the adverse action." *Ryan v. Pace Suburban Bus Div. of Regional Transp. Authority*, ___ F.Supp.2d ___, 2011 WL 3471236, *4 (N.D. Ill. 2011) (*citing* *Turner*, 595 F.3d at 690).  *See also,* *Hicks v. Forest Preserve District of Cook County, Illinois*, ___F.3d___, 2012 WL 1324084, *3 (7th Cir. April 18, 2012).

PTSC concedes that Richmond-Jeffers engaged in a protected activity by filing a charge of discrimination with the EEOC and suffered an adverse employment action.  However, Richmond-Jeffers again has failed to show that she was performing her duties in accordance with her employer's legitimate expectations or that

she was treated less favorably than a similarly situated employee. Richmond-Jeffers did not point to even one employee who was "similarly situated" and refused direct demands from her supervisor, yet retained her position. In light of these shortcomings, Richmond-Jeffers has not established that she can support a prima facie case of retaliatory discharge, and summary judgment must be GRANTED in favor of PTSC on this issue.

PTSC moved to strike a majority of the exhibits Richmond-Jeffers offered in opposition to PTSC's motion for summary judgment and in support of her cross-motion for summary judgment. Because the court granted summary judgment in favor of PTSC on most claims and relied on evidence not addressed in the motion to strike to deny summary judgment on Richmond-Jeffers' claim for failure to accommodate, PTSC's Motion to Strike Portions of Plaintiff's Verified Affidavit and Designation of Materials [DE 153] is DENIED AS MOOT.

───────────────

Based on the foregoing, the Motion for Summary Judgment [DE 136] filed by the defendant, Porter Township School Corporation, on September 12, 2011, is **GRANTED IN PART** and **DENIED IN PART**; the Cross-Motion for Summary Judgment [DE 144] filed by the plaintiff, Nancylee Richmond-Jeffers, on November 16, 2011, is **DENIED**; the Motion to Strike Plaintiff's Memorandum in Support of her

Cross Motion for Summary Judgment and Response to Defendant's Motion for Summary Judgment [DE 149] filed by the defendant on November 18, 2011, is **DENIED**; the Motion for Leave to Uphold her Memorandum in Support of Her Cross-Motion for Summary Judgment and Response to Defendant's Motion for Summary Judgment and Memorandum [DE 151] filed by the plaintiff on November 21, 2011, is **GRANTED**; and the Motion to Strike Portions of Plaintiff's Verified Affidavit and Designation of Materials [DE 153] filed by the defendant on December 2, 2011, is **DENIED AS MOOT**.

ENTERED this 14th day of May, 2012

s/ ANDREW P. RODOVICH
United States Magistrate Judge